# Richmond

### ALVIN JOHNSON COOK V. COMMONWEALTH OF VIRGINIA.

June 13, 1975.

Record No. 740198.

Present, All the Justices.

*Reid A. Simmons*, for plaintiff in error.

*Wilburn C. Dibling, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Carrico, J., delivered the opinion of the court.

The defendant, Alvin Johnson Cook, was convicted by the trial court, sitting without a jury, of possession of hashish, a controlled drug. Imposition of sentence was suspended for a period of ten years.

The evidence shows that on June 20, 1973, Richmond police officers Johnson and Carr, acting upon an informer's tip, secured a warrant to search the defendant's apartment. Finding no one at the apartment, the officers gained entry through an open window. They discovered and seized a quantity of marijuana. As the officers were concluding their search. the defendant arrived in his automobile and entered the apartment. He was placed under arrest for manufacture of the marijuana found in the apartment.

Believing that the search had not disclosed "all the narcotics that was supposed to have been there in the apartment," Officer Johnson went to the defendant's automobile, which was parked on the street "right outside" the apartment. Upon "looking into [the automobile] from outside," Johnson observed a brown paper bag "in the front floorboard on the passenger's side." He also saw, protruding from the bag, a "plastic face-mask."

Officer Johnson recently had seen the defendant "in the company of some people that were using" an identical face mask "to smoke marijuana." Acting upon his "observations" of the face mask, Johnson "reached inside" the automobile and "retrieved" the brown paper bag. He observed, attached to the face mask, a hose containing a residue of marijuana. Within the bag containing the face mask and hose, Johnson found another bag containing nine foil packages of hashish. The defendant then was arrested for possession of hashish.

At the outset of our discussion, it is necessary to define what question is properly presented for decision. The defendant complains in his assignment of error that the trial court erred "in refusing to suppress the evidence of possession of Hashish . . . as this evidence was seized by the police during an illegal search of the defendant's automobile." The defendant now argues that seizure of the hashish was illegal because the search of the automobile was without a warrant and none of the exceptions permitting a warrantless search applies to excuse the absence of a warrant. The only possible basis upon which the search might be sustained, the defendant says, is the "inadvertent plain view" theory enunciated in *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971). The "inadvertent" theory is not applicable to this case, the defendant concludes, because here "the view was deliberate."

At trial, however, when Officer Johnson attempted to testify what he saw at the time he "looked inside" the defendant's automobile, defense counsel objected upon the ground that a police officer has no "right to go up and look in an automobile when it's parked on the street." If it was Officer Johnson's purpose to "look in" the automobile, counsel stated, "he should have got a search warrant." The trial court overruled the defendant's objection, and Officer Johnson then proceeded to relate, without further objection, how he "reached inside" the automobile, "retrieved" the brown paper bag, and then discovered the presence of hashish within the inner bag.

It is not necessary that we examine the various exceptions permitting a warrantless search of an automobile or that we engage in the

judicial debate now in progress concerning the "inadvertent plain view" theory enunciated by a plurality of the members of the Supreme Court in *Coolidge* v. *New Hampshire, supra.* These matters are not relevant to disposition of the present case.

The defendant's position throughout this case has been that the police conducted an illegal search of his automobile when Officer Johnson "looked inside" the vehicle and saw the brown paper bag containing the face mask. Inherent in the defendant's position is the tacit concession that if the alleged search of the automobile was lawful, seizure of the brown paper bag and its contents, including the hashish, was also lawful. The narrow, and the only, question for decision, therefore, is whether a police officer, who is standing on a public street or sidewalk, conducts a search, in the constitutional sense, when he merely "looks in" an automobile parked on the street and observes therein what is openly exposed to view. Common sense and established legal precedent tell us that the answer to this question is in the negative.

It is the right of privacy which the constitutional prohibition against unreasonable searches is designed to protect. There can be little, if any, expectation of privacy when one parks his automobile on a public street and leaves therein, openly exposed to view, items of contraband or other evidence of crime.

What a person knowingly exposes to the public is not a subject of protection by the constitutional prohibition against unreasonable searches. *See Katz* v. *United States,* 389 U.S. 347, 351 (1967). It is not unlawful, but entirely lawful, for a police officer who is on a public street or sidewalk to look, either deliberately or inadvertently, into an automobile parked on the street and to observe what is exposed therein to open view. *See Smith* v. *Slayton,* 484 F.2d 1188, 1190 (4th Cir. 1973).

Such police action does not constitute a search in the constitutional sense. A search "implies a prying into hidden places." *Carter* v. *Commonwealth,* 209 Va. 317, 320, 163 S.E.2d 589, 592 (1968). To search means to conduct an "exploratory investigation;" it involves an "invasion and quest." Merely "looking at that which is open to view is not a search." *Duffield* v. *Peyton,* 209 Va. 178, 183, 162 S.E.2d 915, 918 (1968).

Accordingly, we hold that there was not an illegal search of the defendant's automobile involved in the police action which led to discovery of the hashish, for the possession of which the defendant

was convicted. The judgment of the trial court, therefore, will be affirmed.

*Affirmed.*

Poff, J., concurring.

I agree that the judgment should be affirmed.

As my brother Carrico says, discovery of the face mask was not the product of an unlawful search. The mask was discovered in open view in a constitutionally protected zone of privacy by a police officer outside the protected zone. Since the officer had probable cause to believe that it was evidence of a crime, his entry into the protected zone and the warrantless seizure of the mask did not violate the Fourth Amendment guarantee against unreasonable searches and seizures. *See McDonald* v. *United States,* 335 U.S. 451, 458 (1948) (Jackson, J., concurring); *Smith* v. *Slayton,* 484 F.2d 1188, 1190 (4th Cir. 1973).

Defendant complained that the trial court "erred in refusing to suppress the evidence of possession of Hashish . . . as this evidence was seized by the police during an illegal search of the defendant's automobile." It seems to me that this assignment of error is sufficiently broad to require us to consider not only the legality of the "search" which led to the discovery of the mask but also the legality of the search which led to the discovery of the hashish, the seizure of which led to defendant's indictment and conviction. The hashish, packaged in foil inside a bag within the brown bag on the floorboard, was not in open view, was not identifiable as contraband, and was not discovered except by an "exploratory investigation", an "invasion and quest", and a "prying into hidden places", *i.e.,* by a search. The warrantless seizure of the hashish was constitutionally permissible only if the warrantless search by which it was discovered "falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.' " *Coolidge* v. *New Hampshire,* 403 U.S. 443, 474-75 (1971) (Part II-D of Mr. Justice Stewart's four-Justice plurality expressly joined by Mr. Justice Harlan).

One of these exceptions has come to be known as the "automobile exception". Although an automobile, like a residence or office, is a constitutionally protected zone of privacy, the Supreme Court historically has recognized ". . . a necessary difference between a search of a store, dwelling house or other structure in respect of which a

proper official warrant readily may be obtained and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll* v. *United States,* 267 U.S. 132, 153 (1925). *See also Dyke* v. *Taylor Implement Mfg. Co.,* 391 U.S. 216, 221 (1968); *Brinegar* v. *United States,* 338 U.S. 160 (1949); *Scher* v. *United States,* 305 U.S. 251 (1938); *Husty* v. *United States,* 282 U.S. 694 (1931).

Since it is the inherent mobility of the car which constitutes an "exigent circumstance" justifying an exception to the warrant requirement, it has been argued that the exigency can be met by immobilizing the car until a search warrant has been obtained.

> "[A]rguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater'. But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers* v. *Maroney,* 399 U.S. 42, 51-52 (1970), *reh. denied,* 400 U.S. 856 (1970).

*See also Cady* v. *Dombroski,* 413 U.S. 433, 439 (1973); *Cooper* v. *California,* 386 U.S. 58, 59 (1967).

Here, the police officer had a warrant to search defendant's apartment; he seized a small quantity of contraband from the apartment but had reason to believe that all of the contraband had not been discovered; he had seen defendant park his car adjacent to the stairway leading to the apartment; and inside the car he observed a face mask similar to one he had seen people in defendant's company using to smoke marijuana. Such circumstances were sufficient to constitute probable cause to believe that defendant's car contained contraband.

Under the rule in *Chambers,* such probable cause, standing alone, would seem to be sufficient to validate either a warrantless seizure of Cook's car or a warrantless search of his car. It may be argued that since *Chambers* involved a search of a car stopped by police officers

on a public highway, its rule does not apply to a search of Cook's car which was parked in a space adjacent to his apartment. Assuming that this factual distinction has a meaningful Fourth Amendment significance, the search which led to the discovery of the hashish was nonetheless validated by "exigent circumstances" justifying an exception to the warrant requirement. *Carroll v. United States, supra,* and its progeny leave no doubt that when police officers have probable cause to believe that a parked car contains seizable objects (contraband, fruits or tools of a crime, or other evidence of a crime) and when there is a reasonable risk that the car or seizable objects therein might be removed, a warrantless search of the car and its contents is not constitutionally unreasonable.[1]

Here, the police had probable cause to believe not only that the parked car contained seizable objects, but also that the car or its contents might be removed; they knew that the recently parked car was fully operable and that defendant's girl friend, who shared his apartment, might have keys to the car, and even if not, she had ready access to its contents. Such probable cause activated the "automobile exception" and justified the warrantless search of the entire car, including the interior of the bag,[2] and the warrantless seizure of the contraband discovered there. Under those circumstances, the judgment is properly affirmed.

Cochran, J., joins in the concurring opinion.

---

[1] Such circumstances constitute an exigency justifying an exception to the warrant requirement. *See, e.g., U. S. v. Hill,* 500 F.2d 315, 323-24 (5th Cir. 1974); *U. S. v. Connolly,* 479 F.2d 930, 934-35 (9th Cir. 1973), *cert. dism'd,* 414 U.S. 897 (1973); *People v. Dumas,* 9 Cal. 3d 871, 884-85 512 P.2d 1208, 1217-18 (1973); *England v. State,* 17 Crim. L. Rptr. 2061, 2062 (Md., March 24, 1975); *People v. Bukoski,* 41 Mich. App. 498, 504-505, 200 N.W.2d 373, 377-78 (1972).

[2] When the automobile exception is activated, the right to search "extends to the entire car, including the passenger compartment, the glove compartment, the motor compartment, the trunk compartment, and closed containers within the car. *See Schaum v. Commonwealth, supra* 215 Va. 498, 501, 211 S.E.2d 73, 75 (1975) (search of locked trunk); *U. S. v. Tramunti,* 16 Crim. L. Rptr. 2543, 2544 (2d Cir., March 7, 1975) (search of suitcase in car); *U. S. v. Bush,* 500 F.2d 19, 21 (6th Cir. 1974) (Per Curiam) (search of glove compartment); *U. S. v. Soriano,* 497 F.2d 147, 149 (5th Cir. 1974) (search of suitcases in trunk). *See generally, U. S. v. Anderson,* 500 F.2d 1311, 1315, *reh. denied,* 504 F.2d 760 (5th Cir. 1974); *People v. Ehn,* 320 N.E.2d 536, 545 (Ill. App. 1974)." *Westcott v. Commonwealth,* 216 Va. 123, 126, 216 S.E.2d 60, 63 (1975).