OPINION OF THE COURT
James G. Starkey, J.
The question presented in this case is a novel one, i.e., whether individuals sitting on a parked automobile — outside the passenger compartment — were "occupying” the automo *180 bile when a loaded revolver was found, and thus presumptively in possession of the weapon pursuant to the terms of Penal Law § 265.15 (3). The defendants, charged with criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (4), have moved for inspection of the Grand Jury minutes and dismissal of the indictment pursuant to CPL 210.30 (1) and (2). Upon inspection of the Grand Jury minutes by the court the question must be answered in the negative — the defendants were not "occupying” the automobile within the meaning of Penal Law § 265.15 (3) — and the charges must be dismissed.
FACTS
The evidence presented to the Grand Jury tends to establish that on the evening of July 11, 1986, as one Paul Louissol was walking on Crown Street in this county, an automobile pulled up containing the three defendants and two others. One of the five, who was never identified or apprehended, pointed a revolver at Mr. Louissol and then the car left the scene. Mr. Louissol complained to the police and joined police officers in a survey of the area. The group soon observed the vehicle involved in the incident parked on Carroll Street, not far from where the gun pointing had occurred. They also observed the three defendants outside the car, sitting on the hood, but the gun pointer was nowhere in sight. The police searched the car, found a revolver which Mr. Louissol identified as the one used earlier, and the defendants were arrested.
CONCLUSIONS OF LAW
Since the weapon was not found on the person of any defendant, the prosecution relied on Penal Law § 265.15 (3) in aid of its case. The statute reads, in relevant part: "The presence in an automobile * * * of any firearm * * * is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found, [unless] * * * [the] weapon * * * is found upon the person of one of the occupants”.
Manifestly, the statute, by its terms, does not apply to the only time the defendants were observed in the passenger compartment of the automobile. At that time, the weapon was concededly on the person of one who is not a defendant — the man who pointed it at Mr. Louissol. Thus, the prosecution’s position necessarily hinges on the argument that when the *181 weapon was found in the parked automobile, the defendants^ while sitting on the car outside the passenger compartment— were “occupying” the automobile within the meaning of the statute.
The suggestion that such was the legislative intent is supported — at least in a small way — by an aspect of the legislative history. When first enacted into law in 1936, Penal Law § 1898-a (the forerunner of the present statute) applied the rule — not to those “occupying” the automobile — but to all those “found in such automobile” when the weapon was found. (See, People v Logan, 94 NYS2d 681, 683 [Sup Ct, Kings County 1949].)
The language now contained in Penal Law § 265.15 (3) was adopted when section 1898-a was amended and renumbered in 1963, and the Legislature presumably intended a change in the statute’s coverage — not merely a change for change’s sake. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 192; People v Gravenhorst, 32 NYS2d 760, 764 [NY City Special Session, Bronx County 1942].)
Further, since the terms “all persons occupying” and “occupants” would seem at least slightly broader than the original language, it is arguable that the change signified an intent to broaden the applicability of the statute. (Ibid.)
But the argument is flawed in two respects. In the first place, even if such a legislative intent were established, a cogent argument could be made against the constitutionality of such a presumption. It is basic that the Due Process Clauses of the Fifth and Fourteenth Amendments of the US Constitution limit the power of a Legislature to make the proof of one fact or group of facts evidence of the existence of an ultimate fact upon which guilt is predicated. (See, Tot v United States, 319 US 463, 467 [1943].) It is further settled that a statutory presumption cannot be sustained if the inference is arbitrary —that is, if in common experience, there is no rational connection between the facts proved and the ultimate fact presumed. (Supra, at 467-468; see also, Ulster County Ct. v Allen, 442 US 140 [1979].)
Yet in contemporary society, automobile owners are all too familiar with the spectacle of strangers using the cars of others as seats and lounges. Indeed, arguably, one perched on the outside of an automobile is more likely a stranger to the car and its contents than otherwise; an owner or passenger *182 would presumedly have more regard for the vehicle than to act in such a way.
More important, diligent research has revealed no additional evidence of a legislative intent to include people perched on the exterior of an automobile within the meaning of the term "occupying”, and persuasive evidence to the contrary. In the first place, the committee responsible for the revision flatly stated that the proposed legislation had "for its purpose clarification and rearrangement of present laws affecting firearms and ammunition, and contains no substantive change in the present laws.” (Mem of Joint Legis Comm on Firearms and Ammunition, 1963 NY Legis Ann, at 64, 65.) Secondarily, the problem which triggered passage in 1936 of the forerunner of Penal Law § 265.15 (3) (Penal Law § 1898-a) was the difficulty (when a weapon was found in an automobile) of fastening the onus of possession upon any one of the individuals "present in the car.” (See, People v Logan, 94 NYS2d 681, 683 [Sup Ct, Kings County 1949], supra [emphasis added].)
A separate factor is directly related to the constitutional problem referred to above. The interpretation urged by the prosecution would authorize arrest and conviction of a stranger to an automobile who merely sat on the fender of another’s car. While such conduct would fairly be described as inconsiderate and disrespectful of the property of others, it is not yet felonious. It seems implausible, to say the least — apart from the legislative history — that the Legislature could have intended such a result. Nor does the fact that these defendants were not strangers to the car, but former passengers, significantly change the equation. (Cf., People v Crenshaw, 202 Misc 179 [Bronx County Ct 1951] [statute ruled inapplicable when weapon found in unlocked and unattended vehicle 40 minutes after passengers departed].)
It is true that the presumption provided for in Penal Law § 265.15 (3) has been applied to individuals who were outside the passenger compartment when guns were found in automobiles (See, e.g., People v Hunter, 82 AD2d 893 [2d Dept 1981]; People v Anthony, 21 AD2d 666 [1st Dept 1964].) Those cases, however, are distinguishable. In each, the evidence persuasively demonstrated that the defendant had been in the automobile — simultaneously with the weapon — moments be *183 fore the weapon was found. And, in each case, there was no evidence whatsoever that the gun had been in the possession of a specific passenger.
The facts of this case, as noted above, require a different result. The motion is granted and the indictment dismissed as to each defendant.