COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Alston and AtLee
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
DECEMBER 5, 2017

v.        Record No. 1024-17-4

DANIA MERLIN LEMUS


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Claire C. Schulmeister, Assistant Public Defender, for appellee.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth of Virginia ("Commonwealth")

appeals a pretrial order issued by the Circuit Court for the City of Alexandria ("trial court")

which granted Dania Merlin Lemus' ("appellee") motion to suppress all evidence obtained as a

result of her arrest for driving under the influence on the grounds that the police lacked probable

cause for the arrest.  On appeal, the Commonwealth claims that probable cause supported the

arrest, and thus the trial court committed reversible error by granting the motion to suppress.

This Court agrees and reverses the trial court for the reasons that follow.


I.  BACKGROUND

When reviewing a trial court's decision to grant a motion to suppress evidence, we view

the facts in the light most favorable to the prevailing party below, and we grant all reasonable

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence is as follows.

Shortly after 9:00 p.m. on August 28, 2016, Virginia State Police Trooper Chris McGowan ("McGowan") encountered appellee sitting in the driver's seat of her vehicle, which was stopped on the right shoulder of an on-ramp from Route 7 onto Interstate 395 in Alexandria. McGowan approached and asked appellee if she was having trouble with her vehicle. Appellee explained that she was having trouble with her transmission, that it would not go into reverse. She then shifted several times from park to reverse and back. When asked why she was trying to go into reverse on an on-ramp, appellee then stated that she pulled over to text, and showed McGowan her phone with a social media app open. When McGowan asked appellee for her license, she leafed through a large stack of cards and handed him two Virginia state ID cards (one for her son, one for herself) before producing her driver's license. Throughout this exchange, McGowan noted an odor of alcohol and observed that appellee's eyes were glassy and her speech was slurred.

McGowan ran appellee's license, learning that she had multiple prior DUI convictions and that her license was subject to court restrictions. When he confronted appellee with this information, she denied that her license was subject to any restrictions, so McGowan ran the check again. The second check confirmed the presence of restrictions on her license, which appellee again denied. McGowan then asked appellee to get out of her car to perform field sobriety tests. She declined to do so, asserting her desire to speak to a lawyer. She also refused a preliminary breath test, repeating her desire for a lawyer. McGowan then placed appellee under arrest for DUI, driving with a revoked license, and stopping on the interstate. Throughout the encounter on the roadside, McGowan never observed appellee fall, sway, stumble, or appear to lose her balance. He also never saw her driving erratically.

Appellee moved to suppress all evidence derived from the stop on the grounds that McGowan lacked probable cause for the arrest. During argument on the motion, the Commonwealth sought a concession that even if the arrest was unlawful, the fact that the Commonwealth obtained a search warrant for appellee's blood was a sufficient intervening circumstance to render the results of the blood analysis admissible. Appellee's counsel refused to concede the point and also objected to arguing the exclusionary rule question at that hearing, asserting that the only thing at issue in the suppression hearing was probable cause. The trial court agreed to proceed on the probable cause question, stating that both parties could "take whatever action [they] want to take" after the probable cause ruling. At the conclusion of the suppression hearing, the trial court stated that the case was "close" but ruled that the arrest was not supported by probable cause and granted appellee's motion to suppress. This appeal followed.

## II. STANDARD OF REVIEW

On appeal of a motion to suppress that was granted by the trial court, this Court is bound by the trial court's findings of fact unless they are plainly wrong or unsupported by the evidence. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). In so doing, this Court gives "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). We "review *de novo* the trial court's application of legal standards . . . to the particular facts of the case." McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (citing Ornelas, 517 U.S. at 699).

As a legal standard, "[p]robable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians." Hollis v. Commonwealth,

216 Va. 874, 876-77, 223 S.E.2d 887, 889 (1976) (citing Brinegar v. United States, 338 U.S. 160, 175 (1949)). Probable cause does not require an actual showing of criminal activity, only a "probability or substantial chance" of such activity. Boyd v. Commonwealth, 12 Va. App. 179, 188-89, 402 S.E.2d 914, 920 (1991) (quoting Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983)). When reviewing an officer's determination of probable cause, courts must consider "the totality of the facts and circumstances presented and what those facts and circumstances reasonably meant to a trained police officer." Jones v. Commonwealth, 279 Va. 52, 59, 688 S.E.2d 269, 273 (2010).

III. ANALYSIS

The Commonwealth contends that the facts within Trooper McGowan's knowledge at the time of the encounter were sufficient to provide probable cause for a DUI arrest. In reply, appellee argues that McGowan could consider neither her refusal to perform field sobriety tests nor the record of her prior DUI convictions when making his probable cause determination at the scene. Appellee also contends that the Commonwealth lacks standing to appeal under Code § 19.2-398.

A. Standing to Appeal

A pretrial appeal may be taken by the Commonwealth pursuant to statutorily prescribed circumstances. One such circumstance is in response to "[a]n order of a circuit court prohibiting the use of certain evidence at trial on the grounds such evidence was obtained in violation of the provisions of the Fourth . . . Amendment[]." Code § 19.2-398(A)(2). Appellee claims that the Commonwealth is not entitled to appeal because the trial court's oral ruling at the close of the suppression hearing only addressed the question of probable cause. By the plain language of her motion, however, appellee asked the trial court to "suppress all evidence obtained . . . from her illegal arrest . . . in violation of the Fourth and Fourteenth Amendments." At the conclusion of

- 4 -

the suppression hearing, the trial court stated that it would "grant the motion to suppress." More importantly, the trial court published a written order stating unequivocally that "the motion to suppress is granted." "Because a 'circuit court speaks only through its orders,' we look to the . . . order to discern its holding." Amin v. County of Henrico, 63 Va. App. 203, 209, 755 S.E.2d 482, 484 (2014) (quoting Pilson v. Commonwealth, 52 Va. App. 442, 444, 663 S.E.2d 562, 563 (2008)). The trial court's order granting appellee's motion can only be interpreted as granting the exact relief appellee requested: that all evidence obtained as a result of the arrest would be excluded from use at trial due to the Fourth Amendment violation. Accordingly, the Commonwealth was statutorily entitled to appeal that order.

### B. Refusal of Sobriety Tests

The Supreme Court has squarely addressed the question of whether a subject's refusal to perform field sobriety tests could be considered in making a probable cause determination, holding that such refusals could be considered when "accompanied by evidence of the driver's alcohol consumption and its discernable effect on the driver's mental or physical state." Jones, 279 Va. at 59, 688 S.E.2d at 273. In Jones, the arresting officer testified that he detected a strong odor of alcohol coming from the suspect, who had red, glassy eyes. The officer also testified that the suspect made a number of incoherent statements and did not know what county he was in. The Court held that in the presence of such evidence regarding the suspect's physical and mental state, refusal to perform sobriety tests was relevant to the probable cause determination because it tended "to show an awareness that . . . consumption of alcohol would affect his ability to perform those tests." Id. at 60, 688 S.E.2d at 273.

In the present case, McGowan testified that he detected an odor of alcohol coming from the appellee and that she had slurred speech and glassy eyes. He testified that she gave inconsistent explanations about why she had stopped and that she tried multiple times to put her

car into reverse while he was standing next to her car, on an interstate on-ramp. He testified that she was unable to distinguish her driver's license from other ID cards—including one belonging to her son. Finally, he testified that she persisted in her claims that her license was not suspended or restricted, despite the fact that he had checked his computer database twice and determined that it was.

No fact findings were made, nor was any ruling made regarding witness credibility. The trial court remarked that this was "a close case." Appellee's counsel presented innocent explanations for much of appellee's behavior.[1] When evaluating probable cause, however, officers are "not required to possess either the gift of prophecy or the infallible wisdom that comes only with hindsight. They must be judged by their reaction to circumstances as they reasonably appeared to trained law enforcement officers" at the time they encountered the subject. Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981). The United States Supreme Court recognized long ago that "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens' demands." Gates, 462 U.S. at 243 n.13.

In other words, McGowan was not required to consider all possible alternative explanations for appellee's behavior, and then give credence only to those explanations not related to consumption of alcohol. Trooper McGowan was entitled to assess the entire situation in light of his experience dealing with potentially intoxicated motorists. Rather than evaluating McGowan's on-scene assessment of appellee's condition in light of appellee's subsequent

---

[1] Counsel argued that her glassy eyes could have been the result of allergies, that what sounded like slurred speech was in fact an accent, and that her inability to produce her license was the result of the dark night and the fact that many ID cards are similar in appearance to a driver's license.

explanations, determination of probable cause here turns on "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis, 216 Va. at 877, 223 S.E.2d at 889.

Applying this legal standard *de novo* to the facts viewed in the light most favorable to appellee, this Court concludes it was reasonable for McGowan to perceive that appellee's behavior was attributable to alcohol consumption that had a discernable effect on her mental or physical state. Under those circumstances, he could consider her refusal to perform a sobriety test as evidence to support a finding of probable cause.

## C. Considering Prior Convictions

Appellee further argues her prior DUI convictions were irrelevant to the probable cause determination. Although appellee's prior convictions may not be admissible *at trial* to prove that she was intoxicated on the night in question, see Va. R. Evid. 2:404(b), appellee's argument misstates the law as it relates to probable cause. The law is well established that police knowledge of prior criminal conduct *may* be considered to establish probable cause. See, e.g., Purdie v. Commonwealth, 36 Va. App. 178, 549 S.E.2d 33 (2001) (finding that the officers established sufficient probable cause to arrest for drug possession based in part on knowledge that the suspect had previously stabbed an officer, repeatedly fled from police, and frequently attempted to discard drugs while fleeing); Brinegar, 338 U.S. at 169-70 (finding that officer's knowledge of the suspect's past conduct may be considered); Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975) (holding that knowledge of the suspect and even merely suspecting him of involvement in prior burglaries, combined with his interaction with a known "fence," supported probable cause to arrest for a burglary). Thus, knowledge of prior DUI convictions may be considered when evaluating the probability that an individual might be driving under the influence.

Although McGowan did not have personal knowledge of appellee or her prior convictions before their encounter on the night of August 28, 2016, his routine search of law enforcement databases provided him with the relevant information about her prior convictions. "Probable cause exists when the facts . . . within the arresting officer's knowledge *and of which he has reasonably trustworthy information* are sufficient in themselves" to lead a person of reasonable caution to believe that an offense "has been or is being committed." Schaum, 215 Va. at 500, 211 S.E.2d at 75 (emphasis added) (quoting Draper v. United States, 358 U.S. 307, 313 (1959)). It was entirely appropriate for Trooper McGowan to trust the information available to him, via his cruiser's on-board computer systems, that appellee had prior DUI convictions and a revoked operator's license.

## IV. CONCLUSION

Viewing the undisputed facts in the light most favorable to the appellee, this Court finds that the trial court erred when applying the legal standard for probable cause to those facts. When combined with other evidence of impairment (as existed in this case), Virginia law allows officers in the field to consider refusal of sobriety tests when evaluating probable cause to arrest for DUI. Knowledge of prior DUI convictions, even if not admissible later at trial, is also useful to officers making a probable cause determination. When viewed appropriately through the eyes of the officer on the scene, the totality of the circumstances in this case was sufficient to determine that there was a "probability, or substantial chance" that appellee had committed the offense of DUI. Boyd, 12 Va. App. at 188-89, 402 S.E.2d at 920. Thus, the arrest was supported by probable cause and the trial court erred in finding otherwise. We reverse the trial court's order granting the motion to suppress, and remand for further proceedings consistent with this opinion.

Reversed and remanded.